# United States Court of Appeals
## For the Eighth Circuit

_____

No. 25-2543

_____

The Hanover Insurance Company

*Plaintiff - Appellee*

v.

James Larson; Steven Bateski; Brian Aguiar

*Defendants - Appellants*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: June 9, 2026
Filed: August 10, 2026
[Unpublished]

_____

Before LOKEN, GRUENDER, and KELLY, Circuit Judges.

_____

PER CURIAM.

Three former executives for Bela Flor Nurseries (BFN) claimed Hanover Insurance Company (Hanover) owed a duty to defend and indemnify them under a liability insurance policy it issued to BFN's directors and officers. Hanover denied coverage and sought declaratory judgment. Finding the former executives were not

covered by the policy, the district court[1] granted judgment on the pleadings. We affirm.

I.

Hanover issued an insurance policy to BFN. That policy included coverage for liability resulting from a "wrongful act," including "breach[es] of duty," committed by an Insured Individual. The policy defined "Insured Individual" as:

> [A]ny past, present or future Executive or employee . . . of the Insured Entity while acting solely within his or her capacity as such on behalf of the Insured Entity or in an Outside Capacity.[2]

James Larson, Steve Bateski, and Brian Aguiar (Appellants) were executives and employees of BFN: Larson was Secretary and Chief Operations Officer, Bateski was Vice President, and Aguiar was President and Chief Executive Officer.

In August 2022, BFN took out a loan from Agrifund, LLC. Appellants executed a separate "Guaranty Agreement," guaranteeing payment on the loan in the event BFN defaulted. Each Appellant signed the Guaranty Agreement, and each signature line included his name and the word "GUARANTOR," but made no mention of his respective executive position.

In October 2022, BFN took out another loan, this time from Ball Horticultural Company. Again, Appellants signed a separate agreement, this time denoted as a "Personal Guaranty," guaranteeing payment on the loan if BFN defaulted. And each Appellant signed only his name without any mention of his executive role.

---

[1]The Honorable Stephen R. Bough, United States District Judge for the Western District of Missouri.

[2]"Outside Capacity" is in turn defined in the policy but it is not relevant here, because Appellants do not contend it applies to provide coverage.

The Agrifund and Ball loans themselves were also signed by one or more of the Appellants, and these documents identified BFN as the borrower. Unlike the Guaranty Agreement and the Personal Guaranty, the signature lines were below "Borrower: Bela Flor Nurseries, Inc.," and at least one of the signatures included Appellants' executive designations.

BFN subsequently defaulted on the loans, and both Agrifund and Ball sued to collect from Appellants individually. Appellants turned to Hanover, claiming their liability on the loans was covered under BFN's insurance policy. After denying coverage, Hanover filed a complaint seeking a declaratory judgment that it owed no duty to defend or indemnify. The district court granted judgment on the pleadings under Federal Rule of Civil Procedure 12(c), finding that the former executives signed each guaranty agreement in their personal, rather than executive or official capacities, and were thus not covered by the policy.

II.

"We review a grant of judgment on the pleadings de novo, 'viewing all facts pleaded by the nonmoving party as true and granting all reasonable inferences in favor of that party.'" Ragan v. Berkshire Hathaway Auto., Inc., 91 F.4th 1267, 1269 (8th Cir. 2024) (quoting Henson v. Union Pac. R.R. Co., 3 F.4th 1075, 1080 (8th Cir. 2021)). "Judgment on the pleadings is proper when 'no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law.'" Henson, 3 F.4th at 1080 (quoting Clemons v. Crawford, 585 F.3d 1119, 1124 (8th Cir. 2009)).

Under Missouri law, "[w]hen considering whether a signatory to a contract intended to sign the agreement in his corporate or individual capacity, the determinative question is whether, 'in view of the form of the signature to the agreement, the language of the so called guaranty clause is sufficient to manifest a clear and explicit intent by [the signatory] to assume a personal guaranty contract.'" Capitol Grp., Inc. v. Collier, 365 S.W.3d 644, 648 (Mo. Ct. App. 2012) (alteration

in original) (quoting Wired Music, Inc. v. Great River Steamboat Co., 554 S.W.2d 466, 468 (Mo. Ct. App. 1977)); see also Cardinal Health 110, Inc. v. Cyrus Pharm., LLC, 560 F.3d 894, 899 (8th Cir. 2009) (applying Missouri law).

Here, the Guaranty Agreement and the Personal Guaranty both manifest Appellants' intent to assume personal liability. Neither document includes any reference to Appellants' corporate designations on their signature lines. Nor does either document indicate in any other way that Appellants signed as executives of BFN. In contrast, the loan documents identify BFN as the borrower, with Appellants signing on the company's behalf. See Cardinal Health, 560 F.3d at 900 (finding guarantors personally liable where they "did not sign the Guarantee with reference to their corporate capacities . . . [which was] distinctly different from [their] other sets of signatures in the [agreements] which had [them] signing as either an "Authorized Signature" or on behalf of [the business] as its "owner/President.").

Moreover, construing Appellants to have signed the guaranties in their executive capacities would render those guaranties meaningless. Agrifund and Ball obtained rights against BFN as a corporate entity through the promissory note and the supply and financing agreement, respectively. If the Guaranty Agreement and the Personal Guaranty bound only BFN and not Appellants, the documents would grant Agrifund and Ball rights they "already possessed" under the loans "and would have [BFN] guaranteeing its own debt." Cardinal Health, 560 F.3d at 900; see also Capitol Grp., 365 S.W.3d at 650. "This interpretation would be 'redundant, illusory, absurd, and therefore unreasonable.'" Cardinal Health, 560 F.3d at 901 (quoting Standard Meat Co. v. Taco Kid of Springfield, Inc., 554 S.W.2d 592, 596 (Mo. App. 1977)).

Because Appellants evinced an intent to be bound personally when they signed the Guaranty Agreement and the Personal Guaranty, they did not act "solely within [their] capacity" as executives when they signed either document. As a result, Appellants were not "Insured Individuals" by the terms of the Hanover insurance policy, and Hanover's policy did not provide the coverage they sought.

-4-

III.

We affirm.[3]

_____

_____

[3]Appellants' answer and counterclaims are deemed amended. <u>See</u> 28 U.S.C. §1653.

-5-